IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY MOCHNACH, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 2:03cv329 |
| OHIO VALLEY GENERAL HOSPITAL, | ) ) ) ) | Electronic Filing |
| Defendant. | ) ) | |

## OPINION

CERCONE, D.J.

Plaintiff commenced this action seeking redress for alleged wrongful termination of employment based on age discrimination, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA"), and a violation of the Fair Labor Standards Act, 29 U.S.C. § 201 ("FLSA"). Presently before the court is defendant's motion for summary judgment. For the reasons set forth below, the motion will be granted.

Federal Rule of Civil Procedure 56 (c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's claim, and upon which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. When the movant does not bear the burden of proof on the claim, the movant's initial burden may be met by demonstrating the lack of record evidence to support the opponent's claim. National State Bank v. National Reserve Bank, 979 F.2d 1579, 1582 (3d

Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a <u>genuine issue for trial</u>," or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. <u>Matsushita Electric Industrial Corp. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986) (<u>quoting</u> Fed.R.Civ.P. 56 (a), (e)) (emphasis in <u>Matsushita</u>). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986).

In meeting its burden of proof, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 586. The non-moving party "must present affirmative evidence in order to defeat a properly supported motion" and cannot "simply reassert factually unsupported allegations." <u>Williams v. Borough of West Chester</u>, 891 F.2d 458, 460 (3d Cir. 1989). Nor can the opponent "merely rely upon conclusory allegations in [its] pleadings or in memoranda and briefs." <u>Harter v. GAF Corp.</u>, 967 F.2d 846 (3d Cir. 1992). Likewise, mere conjecture or speculation by the party resisting summary judgment will not provide a basis upon which to deny the motion. <u>Robertson v. Allied Signal, Inc.</u>, 914 F.2d 360, 382-83 n.12 (3d Cir. 1990). If the non-moving party's evidence merely is colorable or lacks sufficient probative force summary judgment must be granted. <u>Anderson</u>, 477 U.S. at 249-50; <u>see also</u> <u>Big Apple BMW, Inc. v. BMW of North America</u>, 974 F.2d 1358, 1362 (3d Cir. 1992), <u>cert. denied</u>, 113 S.Ct. 1262 (1993) (although the court is not permitted to weigh facts or competing inferences, it is no longer required to "turn a blind eye" to the weight of the evidence).

The record as read in the light most favorable to plaintiff establishes the background set forth below. Defendant Ohio Valley General Hospital ("OVGH") serves the medical needs of residents in Southwestern Pennsylvania and Southeastern Ohio. Plaintiff was a long-term employee of defendant who held both part-time and full-time positions during her fourteen (14) years with defendant.

Plaintiff was hired as a part-time secretary in the maintenance facilities department on

January 13, 1988. She was thirty-five years of age. In 1991 she also began working as a part-time secretary in the medical records department while maintaining her part-time position in the maintenance facilities department. A full-time secretarial position became available in the human resources department in November of 1996 and plaintiff applied for the position. David Scott, senior vice president of OVGH, facilitated plaintiff's transfer into the human resources department. Plaintiff was forty-three years of age at the time. Plaintiff held the secretarial position in the human resources department over the next four years.

In December of 2000, the human resources department was reorganized and plaintiff was promoted to the exempt position of human resources assistant. Plaintiff received a significant salary increase. She was forty-seven years of age at this time.

Defendant hired an outside consulting firm to conduct an employee opinion survey in December of 1999. The survey was designed to determine defendant's employees' perceptions of the various departments within OVGH. A tabulated report was prepared from the survey which provided a detailed profile of each department and identified their respective deficiencies and areas for improvement. The manager of each department was then tasked with the responsibility of interviewing appropriate personnel in order to identify underlying problems and formulate a plan to resolve them. The employee opinion survey produced a number of complaints about the human resources department. Some of these complaints specifically referenced plaintiff's position as "secretary" or the staff member who obtained appropriate forms. The comments were critical of plaintiff's competency and demeanor in performing her job.

At approximately the same time the survey results were released Scott received complaints about the human resources department. He and the director of human resources, Beth Conte, interviewed several managers from various departments within the hospital in order to identify the areas giving rise to the complaints. Each manager was questioned about his or her perception of the human resources department as well as the employees within the department. Poor recruiting and follow-up, along with poor customer service, surfaced as two main areas of

concern. Four out of ten managers advised that their employees perceived the staff in the human resources department to be unfriendly. Three managers made negative comments about plaintiff. Two managers advised that their staff had refused to go to the department for assistance because its staff was uncooperative and unfriendly. Plaintiff was aware that the survey results reflected negatively on her.

After considering the results of the survey and managerial interviews, the employee responsible for recruiting within the human resource department was terminated and the head of the department, Conte, was demoted. Shortly after Conte was demoted Terri Scalise-Hamm ("Hamm") became vice president of human resources. Conte resigned a few months later.

Hamm began to reorganize the human resources department in December of 2000. It was at this juncture that plaintiff was promoted to the human resources assistant position. Hamm also hired another human resources assistant, Sue Solt-Lonsinger, with the idea of making the two positions interchangeable. Nevertheless, plaintiff remained primarily responsible for the duties associated with employment/employee relations and Lonsinger handled the wage/salary and benefits processing portion of the work. Plaintiff also handled wage and benefit matters when Lonsinger was unable or refused to assist the employee in question.

After the reorganization Hamm made a number of changes in the way the human resources department provided service to the employees. These changes were not well received and negative complaints concerning the unfriendly and unhelpful environment within the department resurfaced. As a consequence, Scott conducted a second set of interviews in May of 2001 in order to get to the bottom of the recurrent problems within the department.

Scott interviewed eleven of the twenty-six department managers. He also interviewed six non-management employees who had interaction with the department. Several of the managers were critical of plaintiff and her job performance and all six non-management employees supplied negative information concerning plaintiff's attitude and job performance. After receiving at least seventeen comments indicating plaintiff was unfriendly, negative and treated

employees poorly, Scott concluded that "there seemed to be overwhelming evidence that [plaintiff] treated people poorly, she could be mean, sarcastic, negative and she really didn't reflect what we needed in a human resources department." Deposition of David Scott, Exhibit B of Defendant's Appendix of Exhibits, at 69.

Scott discussed the results of his interviews with Hamm and asked her to formulate an appropriate plan of action. Hamm advised plaintiff that she was perceived as unfriendly and unapproachable and she needed to improve her relationships with the employees and create a positive atmosphere within the department.

Plaintiff underwent an annual performance evaluation by Hamm on November 23, 2001. Plaintiff was rated in several categories on a one to five scale. She received an overall 4.1 rating and Hamm assigned a four rating for "guest relations," which stood for "consistently demonstrates positive guest relations behaviors." She also received a rating of four for "teamwork," which indicated she consistently worked effectively with others. Plaintiff was recommended for a merit increase on the ground that all basic requirements had been met, including the basic requirements for competency. Hamm made the following written comment on the evaluation:

> Mary works hard and is very conscientious about her work. She has communicated many good ideas which have helped make the department successful this past year ....

Exhibit A to Plaintiff's Affidavit. Hamm thus did not share the negative perception of plaintiff held by several managers and employees who had participated in the interviews conducted by Scott.

In December of 2001 a nurse anesthetist, Susan Rakovan, sought assistance from the department in relation to a health insurance issue. Rakovan left the department and then immediately returned after realizing that she had an additional question. After the encounter Rakovan complained to the president of OVGH, Bill Provenzano, that plaintiff had referred to

her in a derogatory and demeaning manner.[1] Provenzano notified Scott of Rakovan's account of the incident. Plaintiff has consistently denied that a negative encounter incurred or that she referred to Rakovan in a derogatory manner.

On January 10, 2002, Scott began an investigation into the incident. Rakovan confirmed the incident as she had reported it. Scott also interviewed Hamm and Lonsinger. Lonsinger indicated she did not witness or overhear the incident involving Rakovan, but she had heard plaintiff use the same language to refer to other employees. She also reported that plaintiff would advise employees from time to time that she was unable to help them right then and there, but would do her best to assist them as soon as possible. Plaintiff made these statements as a result of under staffing, which was wide spread throughout the hospital.

Scott met with plaintiff on January 9, 2002. During the meeting Scott raised the allegation by Rakovan as well as the negative results from the interviews and employee survey. Plaintiff advised Scott that she was going to file a grievance against the hospital. Scott advised plaintiff that he would make a decision concerning her continued employment by the next day. Scott discussed the matter with Hamm and directed Hamm to telephone plaintiff and advise her not to report to work until a decision was made concerning her continued employment.

Scott discussed the matter with Provenzano and thereafter advised Hamm that plaintiff would be terminated. Hamm disagreed with the decision and argued with Scott because she believed that plaintiff was a good employee. Hamm was advised that she would be fired unless she terminated plaintiff. Hamm met with plaintiff and advised her that she had to be terminated. Hamm then gave plaintiff the option of resigning under the threat of immediate termination, which plaintiff did because she wanted to avoid an involuntary termination on her work record. Hamm cried during the course of the meeting.

Plaintiff's position was not filled following her forced resignation. Instead, the

---

[1] Rakovan indicated she heard plaintiff refer to her as a "fat ass bitch" when she was returning to the department.

department was reorganized and plaintiff's job duties were disseminated among three employees within the department: Sue Lapinski, who was fifty-two years of age, assumed many of the managerial responsibilities previously assigned to plaintiff; Danielle Sansanese, who was twenty-eight years of age, was assigned a number of clerical tasks that previously were part of the position held by plaintiff; and Mary Obriot was hired as a human resources associate and volunteer coordinator. Obriot was assigned the benefit duties that previously had been handled primarily by Lonsinger but occasionally by plaintiff.

Defendant contends it is entitled to summary judgment because development of the record has identified several shortcomings in plaintiff's prima facia case. In addition, defendant contends that plaintiff has failed to undermine sufficiently defendant's proffered explanation for the adverse employment action, and thus plaintiffs cannot carry her burden of proving that defendant's articulated reasons were a mere pretext for age discrimination. Plaintiff contends that she has sufficiently controverted defendant's proffered explanation and thus genuine material issues of fact remain on her age discrimination claim.[2]

The standards governing summary judgment in the context of employment cases are well established. In order to prevail on a claim of intentional age discrimination, a plaintiff must prove that his or her age actually motivated or had a determinative influence in the adverse employment action in question. Fasold v. Justice, 409 F.3d 178, 184 (3d Cir. 2005) (citations omitted). This burden can be met by presenting either direct evidence of discrimination or indirect evidence that satisfies the three-step process known as the McDonell Douglas paradigm. Plaintiff seeks to establish a claim of intentional age discrimination resulting in discharge through indirect evidence. A claim under the ADEA based on indirect evidence is evaluated pursuant to the McDonnell Douglas and Burdine burden-shifting analysis.[3]

---

[2]Plaintiff concedes defendant is entitled to summary judgment on her FLSA claim.

[3]Under this framework the parties' respective evidentiary burdens have been summarized as follows:

At step one the plaintiff has the burden of presenting a prima facia case of discrimination. See Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc). The major purpose of the prima facia case is to eliminate the most obvious lawful explanations for the defendant's adverse employment action and raise a presumptive inference of discrimination. Pivirotto v. Innovative Systems, Inc., 191 F.3d 344, 352 (3d Cir. 1999) (citing Burdine, 450 U.S. at 253-54 ("[t]he prima facia case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection.")). A prima facia case raises an inference of discrimination because the presumed circumstances, if left unexplained, indicate it is likely that the defendant's actions were based on consideration of impermissible factors. Id. (quoting Furnco Construction Corp. v. Waters, 438 U.S. 567, 577 (1978)).

Defendant challenges plaintiff's ability to establish a prima facia case on several grounds. It maintains that plaintiff cannot prove she was qualified for the position because the record reflects negative criticism of plaintiff's job performance throughout the time she held the human resource assistant position. Defendant further asserts that plaintiff cannot show she suffered an adverse employment action because she resigned. Finally, defendant maintains there is no evidence that plaintiff was replaced by a younger worker.

---

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facia case of discrimination. Second, if the plaintiff succeeds in proving the prima facia case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the [adverse employment action]. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-253 (1981) (citation omitted). Notwithstanding these shifting burdens of production, the "ultimate burden of persuading the trier of fact that the [employer] intentionally discriminated against the [employee] remains at all times with the [employee]." Id. at 253.

8

There is no talismanic formula for presenting a prima facia case. <u>Jones v. School District of Philadelphia</u>, 198 F.3d 403, 411 (3d Cir. 1999) ("the elements of a prima facia case depend on the facts of the particular case"); <u>Fasold</u>, 409 F.3d at 185 n.10 ("the precise elements of a prima facia case may vary with these particular circumstances."). The relevant inquiry is whether the plaintiff has suffered an adverse employment action under circumstances which raise an inference of unlawful discrimination. <u>Waldron</u>, 56 F.3d at 494. Plaintiff's burden at this step is "minimal" and is viewed as a means of presenting a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination. <u>Id</u>.; see also <u>Furnco</u>, 438 U.S. at 577.

Plaintiff has satisfied the "minimal" burden necessary to present a prima facia case. She was forty-eight years of age in January of 2002. She was qualified for the position. Despite defendant's contentions to the contrary, plaintiff was promoted into the exempt position of human resources assistant in December of 2000 and held that position for approximately fourteen months. This in itself is sufficient to establish her qualifications for the position. Plaintiff also suffered an adverse employment action. She resigned only under threat of being immediately terminated. Finally, plaintiff has established that at least some of her duties were assigned to a younger individual not within the protect class. While defendant's argument that the bulk of plaintiff's substantive responsibilities were assigned to an individual who actually was older than plaintiff is not without force, the record is to be read in the light most favorable to plaintiff at this juncture and the ultimate inferences to be drawn from and the probative force of the facts underlying plaintiff's prima facia case are more appropriately considered at the third step of the analysis.

If the plaintiff presents a prima facia case, the second stage of the <u>McDonnel Douglas</u> paradigm requires the defendant to articulate a legitimate explanation for the adverse employment action at issue. <u>Keller</u>, 130 F.3d at 1108. The defendant's burden at this step is one of production, not persuasion, and the court's consideration of it "can involve no credibility

assessment." St. Mary's Honor Center, 509 U.S. at 509. If the defendant meets this burden, the presumption of discrimination created by the prima facia case "drops" from the case. St. Mary's Honor Center, 509 U.S. at 511; Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000).

    Defendant has advanced a legitimate reason for terminating plaintiff's employment. In response to ongoing complaints from employees concerning the human resources department, a high ranking supervisor conducted interviews with department managers and certain employees to identify areas for improvement. These undertakings produced negative criticism concerning plaintiff's competency and comportment in dealing with employees seeking assistance from the department. Thereafter, an employee accused plaintiff of being rude and discourteous and after conducting a brief investigation Scott credited the employee's version of the event. Consequently, Scott made the decision to terminate plaintiff's employment after consultation with Provenzano based on continuing complaints concerning plaintiff.

    The third step of the analysis is often the most critical. Fasold, 409 F.3d at 185 ("Therefore, this case, like many ADEA actions, turns on the final step of the McDonell Douglas framework ...."). At this juncture the inquiry turns to whether the plaintiff has presented sufficient evidence to allow a reasonable finder of fact to find by a preponderance of the evidence that the defendant's proffered reasons are a pretext for invidious discrimination. Id.

    The United States Court of Appeals for the Third Circuit has summarized the plaintiff's burden at summary judgment on this step as follows:

> Specifically, in Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994), and later in Sheridan [E.I. DuPont de Nemours and Co., 100 F.3d 1061 (3d Cir. 1996) (en banc)], we stated that a plaintiff may defeat a motion for summary judgment (or judgment as a matter of law) by pointing "to some evidence, direct or circumstantial, from which a factfinder could reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer action." Fuentes, 32 F.3d

at 764; Sheridan, 100 F.3d at 1067.

Jones, 198 F.3d at 412-13. Under the first approach, the finder of fact's rejection of the defendant's proffered explanation allows, but does not compel, a finding of discrimination and judgment for the plaintiff. Sheridan, 100 F.3d at 1061; Reeves, 530 U.S. at 147 ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.") In other words, once a defendant's justification has been discredited, a jury is entitled to infer that discrimination is the most likely alternative explanation, particularly because the defendant is in the best position to explain the actual reason for its decision. Reeves, 530 U.S. at 147. "Thus, a plaintiff's prima facia case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Id. at 148; Sheridan, 100 F.3d at 1061 (same).

"To discredit the employer's proffered reason ... the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Fuentes, 32 F.3d at 765. Instead, the plaintiff must come forward with evidence that demonstrates "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." Id. (citations omitted). In meeting this burden the plaintiff need not cast doubt on every explanation advanced by the defendant, but rather is only required to present sufficient evidence from which a factfinder reasonably could infer that each of the employer's proffered non-discriminatory reasons is unworthy of credence. Id. at 764. For example, "[i]f the defendant proffers a bagful of legitimate reasons, and the plaintiff manages to cast substantial doubt on a fair number of them, the plaintiff may not need to discredit the remainder." Id. at 764 n. 7. "That is because the factfinder's rejection of some of

11

the defendant's proffered reasons may impede the employer's credibility seriously enough so that a factfinder may rationally disbelieve the remaining proffered reasons, even if no evidence undermining those remaining rationales in particular is available." Id.

Plaintiff marshals the following in an effort to identify sufficient weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in defendant's proffered legitimate explanation for the adverse employment action. First, plaintiff notes that only forty-seven days prior to her forced resignation Hamm gave plaintiff a very positive annual performance evaluation. Hamm rated plaintiff 4.1 out of a possible 5 overall, and indicated plaintiff consistently or always met requirements in most of the "behavioral functions" areas. Plaintiff received a merit increase based on this evaluation and Hamm made a very positive overall comment about plaintiff's work ethic and job-related insights.

Second, plaintiff notes that Hamm disagreed with the decision of Scott and Provenzano to terminate plaintiff and in voicing her opposition to the decision indicated that plaintiff was a very good employee. Hamm admitted she forced plaintiff to resign only under the threat of being terminated herself if she did not fire plaintiff.

Third, plaintiff notes that defendant failed to comply with its own written progressive discipline policy with regard to the allegations by Rakovan. Defendant's written policy established a protocol wherein an employee generally is to be verbally counseled about deficiencies in performance, followed by a written warning. If these first two steps do not resolve the matter, the third step is an unpaid suspension. The fourth step is termination. Plaintiff points out that even if defendant's version of the events in question is credited, plaintiff was deprived of steps two and three of the progressive discipline policy. She received no written warning of deficiencies in her performance; nor did she receive a suspension without pay prior to termination.

Similarly, plaintiff notes that her two most recent immediate supervisors, Hamm and Conte, never disciplined her in any manner. Plaintiff further observes that she did not commit

any of the enumerated examples of conduct listed in defendant's progressive discipline policy, such as intoxication, insubordination or stealing, that would warrant the more severe discipline of termination in the first instance.

In addition, plaintiff has produced affidavits and verified statements by employees or prior employees of defendant who characterize plaintiff as friendly, professional, helpful, pleasant, business like, confident and so forth. Finally, plaintiff has controverted Rakovan's allegations by denying that she made such remarks and attesting that certain members of defendant's senior management knew Rakovan to be a liar and untrustworthy.

Based on the above, plaintiff contends that material issues of fact remain and a finding of age discrimination may be rendered in her favor.

Plaintiff's proffered evidence in support of establishing pretext is insufficient as a matter of law. It is well-settled that an evaluation of whether the evidence as a whole is sufficient to establish pretext is a fact-based inquiry. Kautz v. Met-Pro Corp., 412 F.3d 463, 468 (3d Cir. 2005) (citing Simpson, 142 F.3d at 646). In undertaking this inquiry "[t]he question is not whether the employer made the best or even a sound business decision; it is whether the real reason is discrimination." Keller, 130 F.3d at 1109. A mere showing that the employer's decision was wrong
or mistaken is insufficient because the real issue is whether discriminatory animus motivated the employer's decision, not whether the employer was wise, shrewd, prudent or competent in making the decision. Fuentes, 32 F.3d at 765.

Plaintiff's evidence demonstrates nothing more than Scott may have made an unwise or ill-founded decision to terminate plaintiff. It does not sufficiently identify such inconsistencies, implausibilities or weaknesses from which the finder of fact could conclude that defendant's decision was so lacking in merit that it is unworthy of belief and therefore defendant must be disassembling to coverup the presence of discriminatory animus.

Hamm's annual performance evaluation of plaintiff and her disagreement with upper

13

management's decision to terminate plaintiff do not identify weaknesses, implausibilities, inconsistencies or incoherencies in defendant's proffered explanation. Plaintiff does not deny that both the employee survey and the interviews conducted by Scott produced at least some negative criticism that was directed toward plaintiff. Plaintiff does not deny that Rakovan accused plaintiff of referring to her in a derogatory and demeaning manner. Plaintiff does not deny that Scott questioned Rakovan and ultimately accepted her version of the event in question. Hamm's perception of plaintiff's work-related abilities and behavioral functioning does not impeach the core facts supporting Scott and Provanzo's decision to terminate plaintiff. See Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 528 (3d Cir. 1992) ("Pretext is not established by virtue of the fact that an employee has received some favorable comments in some categories or has, in the past, received some good evaluations.").

Similarly, plaintiff's attempt to rebut the negative criticism which informed Scott's concern about plaintiff's performance within the department does not identify an inconsistency or incoherency in defendant's rationale. Plaintiff has failed to point to any employee who claims that Scott misinterpreted his or her comments about plaintiff or falsely indicated that he or she made negative comments about plaintiff's performance or attitude. As such, the fact that some employees or prior employees believed that plaintiff was competent and friendly does not undermine the fact that Scott had received negative feedback on plaintiff's performance and attitude on more than one occasion.

Plaintiff's attempt to show pretext by defendant's failure to utilize all four steps of its progressive discipline policy is virtually devoid of persuasive force. While plaintiff proffers her own account of Lonsinger making derogatory comments about employees seeking assistance from the department, plaintiff has failed to establish that Lonsinger was similarly situated to plaintiff with regard to employee-related complaints and that Scott was aware of Lonsinger's course of conduct and failed to discipline Lonsinger where an incident of similar magnitude so warranted. See Simpson v. Kay Jewelers, 142 F.3d 639, 645-47 (3d Cir. 1998). (When utilizing

14

a defendant's comparative treatment of others to raise an inference of discrimination the plaintiff "cannot selectively choose a comparator" who was not similarly situated, but instead must point to evidence that is probative of unequal treatment motivated by discriminatory animus.). Plaintiff concedes that defendant retained discretion in the implementation and enforcement of the progressive discipline policy and she does not provide any evidence to establish that Scott lacked the authority to bypass any interim step in meting out appropriate discipline. Again, this evidence merely establishes that defendant's decision may have been premature or unbridled. It does not, however, amount to evidence that the decision "was so implausible, inconsistent, incoherent or contradictory that it must be a pretext for something else." Kautz, 412 F.3d at 471 (collecting cases in support).

Finally, plaintiff's denial of Rakovan's accusations pertaining to plaintiff and plaintiff's supposition that Rakovan was known to senior management to be a liar and untrustworthy do not provide proof of pretext. Plaintiff concedes that it was Scott's prerogative to believe Rakovan. Plaintiff has proffered no evidence indicating Scott did not believe Rakovan or had direct proof that she was lying with regard to the incident in question. Merely rehashing the underlying events serves only to demonstrate that Scott's impressions regarding the incident were wrong or mistaken; it does not supply evidence from which the inference of discriminatory animus may be drawn.

Collectively the various strands of evidence plaintiff seeks to weave together in support of her claim carry no additional probative force. Plaintiff bears the burden of showing that some of the defendant's proffered reasons are pretextual in a way that the defendant's credibility is seriously undermined, thereby throwing all of the defendant's proffered reasons into doubt. Kautz, 412 F.3d at 476. The import of the whole of plaintiff's evidence amounts to no more than the sum of its parts. The circumstances underlying plaintiff's prima facia case are of minimal probative force in creating an inference of discrimination, and, at best, plaintiff's evidence of pretext supports only the proposition that plaintiff can offer different explanations or

interpretations of the events leading to defendant's adverse employment decision. Because her evidence does not actually dispute any of the core facts and basic underpinnings advanced by defendant, plaintiff's evidence fails to impugn defendant's proffered explanation in a manner that will permit a finding of pretext. See Keller, 130 F.3d at 1110; Fuentes, 32 F.3d at 765. Accordingly, defendant's motion for summary judgment must be granted.

                                                /s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:    James H. Logan, Esq.
       Logan & Logan
       Suite 3201 Grant Building
       Pittsburgh, PA 15219

       Martin J. Saunders, Esq.
       Marijane E. Treacy, Esq.
       Jackson Lewis LLP
       28th Floor, One PPG Place
       Pittsburgh, PA 15222